**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | | |
|---|---|---|
| **Q MARKETING GROUP, LTD.,** | : | **Docket No.:** |
| | : | **05cv0261** |
| Plaintiff, | : | |
| | : | **COMPLAINT and** |
| - against - | : | **JURY DEMAND** |
| | : | |
| **P3 INTERNATIONAL CORPORATION,** | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------x

Plaintiff Q Marketing Group, Ltd. ("Plaintiff"), by its attorneys, Kane Kessler, P.C., as and for its complaint against defendant P3 International Corporation ("Defendant"), respectfully alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction of this action based upon 28 U.S.C. Sections 1331 and 1337, because the claims asserted by Plaintiff herein arise under the Acts of Congress regulating commerce or protecting trade and commerce against restraints and monopolies, specifically 15 U.S.C. Section 1, as well as the principles of supplemental and pendent jurisdiction under 28 U.S.C. Section 1367.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b), because Defendant resides in this district.

### THE PARTIES

3. At all times hereinafter mentioned, Plaintiff was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business located at 344 Great Neck Road, Great Neck, New York.

#218829.1

4. At all times hereafter mentioned, Plaintiff was and is engaged in the business of manufacturing various products which are sold principally by mail order throughout the United States.

5. Upon information and belief, at all times hereinafter mentioned, Defendant was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business located at 132 Nassau Street, New York, New York.

6. Upon information and belief, at all times hereinafter mentioned, Defendant is engaged in the business of manufacturing consumer electronics and other products sold throughout the United States by the mail order and by retail outlets and is a competitor of Plaintiff.

**AS AND FOR A FIRST CAUSE OF ACTION**

7. In or around March 2004, Plaintiff began manufacturing and introduced into interstate commerce a personal air cleaning product identified as the BELL&HOWELL Desktop Ionizer/Air Purifier (the "B&H Ionizer").

8. Shortly thereafter, Defendant advised Plaintiff that Defendant was the exclusive importer of a personal air cleaning product identified as the IONIZAIR Tabletop Air Ionizer, ("IONIZAIR"), and alleged that Plaintiff's sale of the B&H Ionizer with its then current design, packaging and marketing materials, infringed upon Defendant's copyrights and constituted unfair competition with respect to its IONIZAIR.

9. In response to Defendant's complaint, during August, 2004, Plaintiff modified the design, packaging and marketing material of its B&H Ionizer in order to eliminate and settle

any claim by Defendant that such items infringed upon Defendant's copyrights and/or constituted unfair competition.

10. In order to further settle the parties' dispute, on or about August 19, 2004, Plaintiff and Defendant entered into an agreement (the "Settlement Agreement") whereby Plaintiff agreed, <u>inter alia</u>, as follows:

"5. Q Marketing, its officers, directors, agents, employees, principals, subsidiaries, affiliates and all those in active concert or participation with any one of them, shall immediately and permanently refrain from the following acts:

(a) selling, distributing, advertising, marketing, promoting or offering for sale the B&H ionizer for resale in a retail store;

(b) selling, distributing, advertising, marketing, promoting or offering for sale the B&H ionizer to a catalog merchant, known to Q Marketing to be a customer of P3 who exhibits the P3 Ionizer in a mail order medium, for a period of two years from the date of this Agreement."

A copy of the Settlement Agreement is annexed hereto as Exhibit "A" and is incorporated by reference herein.

11. During November 2004, Plaintiff offered the B&H Ionizer for sale in a nationally distributed catalog known as the Taylor Gifts Catalog.

12. By letter dated December 21, 2004, Defendant alleged that Plaintiff's conduct in offering the B&H Ionizer for sale in the Taylor Gifts Catalog constituted a violation of Section 5(b) of the Settlement Agreement. A copy of the aforesaid letter is annexed hereto as Exhibit "B" and is incorporated by reference herein.

13. By letter dated December 21, 2004, Defendant further demanded that Plaintiff "immediately confirm to us in writing…that it has not shipped the Bell+Howell desk top ionizer

to Taylor Gifts or that it has stopped shipment or recalled all such product that has been shipped to that P3 customer, and that it has in all other ways fully complied with the terms of its agreement with P3."

14. Plaintiff has not complied with Defendant's demand.

15. Upon information and belief, Section 5 of the Settlement Agreement is unenforceable, because it is an agreement in restraint of trade which affects interstate commerce, and therefore violates the Sherman Act, 15 U.S.C. Section 1 and otherwise constitutes unfair competition.

16. Upon information and belief, Section 5 of the Settlement Agreement further violates the Sherman Act because it bears no reasonable relationship to the copyrights which Defendant seeks to protect and is beyond the scope of any means necessary to protect Defendant's copyright interests.

17. Defendant's attempts to enforce Section 5 of the Settlement Agreement have caused, and absent court intervention, will continue to cause grievous injury to Plaintiff's business and to competition in the personal ionizer business in general.

18. By reason of the foregoing, a justiciable controversy exists between the parties concerning whether Section 5 of the Settlement Agreement is valid and enforceable.

19. Plaintiff has no adequate remedy at law.

20. Plaintiff demands judgment declaring that Section 5 of the Settlement Agreement is unenforceable by reason of its violation of the Sherman Act, 15, U.S.C. Section 1 and its anticompetitive effect on the personal ionizer interstate market.

## AS AND FOR A SECOND CAUSE OF ACTION

21. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 20 above, as if more fully set forth herein at length.

22. As alleged herein, Section 5(b) of the Settlement Agreement prohibits Plaintiff from selling the B&H ionizer to a catalog merchant, known to Q Marketing to be a customer of P3 who exhibits the P3 Ionizer in a mail order medium.

23. Defendant further stated in its letter dated December 21, 2004 that on December 6, 2004, Defendant advised Plaintiff that Taylor Gifts was a customer of Defendant and therefore, as of that date, Plaintiff knew that Taylor Gifts was a customer of Defendant and that any sale to Taylor Gifts would constitute a violation of the Settlement Agreement.

24. In response to Defendant's December 21, 2004 letter, Plaintiff advised Defendant that at the time the Settlement Agreement was executed, Plaintiff did not know that Taylor Gifts was a customer of Defendant and, thus, such sale did not constitute a violation of Section 5(b) of the Settlement Agreement, despite Defendant's December 6, 2004 notification.

25. By reason of the foregoing, a justiciable controversy exists between the parties as to whether the language of Section 5(b) of the Settlement Agreement means that Plaintiff is prohibited from selling to only those entities which were known to Plaintiff to be customers of Defendant at the time the Settlement Agreement was entered into, or whether Plaintiff is prohibited from selling to any and all entities which Defendant later advises Plaintiff is/are a customer of Defendant.

26. Plaintiff has no adequate remedy at law.

27. Plaintiff demands judgment declaring that Section 5(b) of the Settlement Agreement, if it is deemed enforceable in the first instance, requires that Plaintiff be prohibited

from selling its B&H Ionizer only to those entities which were known by Plaintiff to be a customer of Defendant at the time the Settlement Agreement was executed.

### AS AND FOR A THIRD CAUSE OF ACTION

28. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 above, as if more fully set forth herein at length.

29. At all relevant times, Plaintiff had contractual and/or business relationships with various catalog merchants, including, but not limited to Taylor Gifts, throughout the United States.

30. Upon information and belief, Defendant knew of the contractual and/or business relationships between Plaintiff and the aforesaid catalog merchants and of the time, effort and money which Plaintiff had expended in order to procure and retain those contractual and/or business relationships.

31. After discovering that Plaintiff had offered its B&H Ionizer for sale through the Taylor Gifts Catalog, Defendant set out to usurp Plaintiff's business for itself through improper and unfair means.

32. Commencing in or around December 2004 and continuing thereafter, Defendant contacted several of the catalog merchants with which Plaintiff had contractual and/or business relationships, including, but not limited to, Taylor Gifts, and advised such catalog merchants that Plaintiff's sale of its B&H Ionizer through such catalog merchants constituted unfair competition and copyright infringement of Defendant's product.

33. In a further effort to interfere improperly with Plaintiff's business relationships and to misappropriate such business for itself, Defendant further advised the Plaintiff's catalog merchants that:

(a) they should not place Plaintiff's B&H Ionizer in their catalogs;

(b) they should not ship any B&H Ionizers which had already been placed in their catalogs and were ordered by third-party purchasers;

(c) the B&H Ionizer was a non-legitimate and infringing product; and

(d) the price offered by Plaintiff for its B&H Ionizers was not a "genuine" price, but was an artificially low price which did not reflect the true market price of a genuine item.

34. Defendant, by unfair and improper means, as described herein, intentionally, maliciously and tortiously interfered with Plaintiff's contracts and business relationships and improperly induced, enticed, procured and caused various of Plaintiff's catalog merchants to terminate and/or modify their contracts and/or business relationships with Plaintiff.

35. As a proximate result of Defendant's conduct, as described herein, there is a likelihood of irreparable injury to Plaintiff's business, reputation, goodwill and opportunity to obtain compensation in connection with the commercial exploitation of Plaintiff's products.

36. Unless enjoined by the court, Defendant will continue to tortiously interfere with Plaintiff's contracts and/or business relationships, thereby causing immediate and irreparable harm to Plaintiff.

37. Plaintiff has no adequate remedy at law and cannot be compensated solely by monetary damages.

38. Plaintiff is entitled to a permanent injunction restraining Defendant, its officers, agents, employees and anyone acting in concert with them, from engaging in any further acts of tortious interference with plaintiff's contractual and/or business relationships.

39. As a proximate result of Defendant's conduct, as described herein, Plaintiff is entitled to damages in an amount to be determined at trial, but not less than $100,000, plus interest.

40. Defendant's conduct, as alleged herein, was malicious and oppressive, was done with the intent to vex and injure Plaintiff, was done with willful and conscious disregard of Plaintiff's rights and with an awareness of the injurious consequences of such actions to Plaintiff.

41. As a further result, Plaintiff is entitled to an award of punitive damages, in an amount to be determined at trial, but not less than $1,000,000.

**WHEREFORE**, Plaintiff demands judgment against defendant P3 International Corporation as follows:

(a) upon the first cause of action, judgment declaring that Section 5 of the Settlement Agreement is unenforceable by reason of its violation of the Sherman Act, 15, U.S.C. Section 1 and its anticompetitive effect on the personal ionizer interstate market; or alternatively,

(b) upon the second cause of action, judgment declaring that Section 5(b) of the Settlement Agreement prohibits Plaintiff from selling its B&H Ionizer only to those entities which were known by Plaintiff to be a customer of Defendant at the time the Settlement Agreement was executed;

(c) upon the third cause of action, for compensatory damages in an amount exceeding $100,000, plus punitive damages in an amount exceeding $1,000,000 and a permanent

injunction prohibiting Defendant from tortiously interfering with Plaintiff's contractual and business relationships; plus

       (d)    the costs and disbursements of this action, together with such other, further and different relief as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff demands trial by jury on all issues.

Dated:     New York, New York
              January 10, 2005

                              Respectfully submitted,

                              KANE KESSLER, P.C.

                              By:_____
                                 S. Reid Kahn (SRK -1458)
                                 Dana Susman (DS-5436)
                              Attorneys for Plaintiff
                              1350 Avenue of the Americas
                              New York, New York 10019
                              (212) 541-6222